IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRISTINA L. BENEDICT, et al.,      )
      )
      Plaintiffs,      )
      )
v.      )      Case No. 05-2306-CM
      )
ALTRIA GROUP, INC., et al.,      )
      )
      Defendants.      )

## MEMORANDUM AND ORDER

### I.  Introduction

This is a "tobacco" case, but not of the personal injury variety.  Highly summarized, the legal claims in this case are that the defendants, Philip Morris USA, Inc. ("Philip Morris"), and its corporate parent, Altria Group, Inc. ("Altria"), violated the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 et seq., and that defendants were unjustly enriched, by marketing "Marlboro Lights" and "Cambridge Lights" brands of cigarettes as being lower in tar and nicotine than regular cigarettes.  The factual allegation upon which these claims is predicated is that although defendants' light cigarettes yield lower tar and nicotine quantities when tested by a machine approved by the Federal Trade Commission ("FTC"), they do not in fact deliver lower quantities of tar and nicotine to smokers.  Defendants allegedly knew their light cigarettes would not actually deliver lower amounts of these chemicals to smokers, but marketed them as such.  Count I of the amended

complaint (doc. 40) alleges defendants' above-described conduct constitutes a deceptive practice under K.S.A. § 50-626(b)(1)(A) and, in Count II, it is claimed defendants were unjustly enriched by the amounts smokers paid for light cigarettes.

The case is before the court on the motion of the plaintiffs, Kristina L. Benedict and Tammy Brown, for class certification of the KCPA claim pursuant to Rule 23 of the Federal Rules of Civil Procedure (**doc. 59**).  Also before the court is Philip Morris' motion for partial summary judgment, made pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, with regard to plaintiff Brown's individual KCPA claim (**doc. 69**).  The instant motions have been briefed extensively (*see* docs. 60-65, 70, 73-104, 107-11, 119, 124-28, and 130-33).

The parties have consented to the undersigned U.S. Magistrate Judge, James P. O'Hara, ruling on the pending motions.  That consent has been approved by the presiding U.S. District Judge, Carlos Murguia (*see* docs. 115 and 116, respectively).

On October 20, 2006, the court held a hearing on the instant motions.  Plaintiffs appeared through counsel, Mark C. Rossman (of Mantese and Associates, P.C.), and James C. Wirken (of the Wirken Law Group).  Philip Morris appeared through counsel, Gary D. Long, John K. Sherk, III, and J. Eugene Balloun (of Shook Hardy & Bacon L.L.P.).  Altria appeared through counsel, Brandon J.B. Boulware (of Rouse Hendricks German & May, P.C.).  At the conclusion of the hearing, the court permitted the parties to file supplemental briefs.

The court is now prepared to rule.  Before doing so, the court would like to commend counsel on their excellent work in briefing and at oral argument which was very helpful in resolving the difficult issues presented.

## II.  Background

According to plaintiffs' papers, the whereabouts of plaintiff Kristina L. Benedict are currently unknown.  During the hearing, counsel confirmed this fact and stipulated that Ms. Benedict should be dismissed.  Accordingly, Ms. Benedict's claim is hereby dismissed pursuant to Fed. R. Civ. P. 41(a)(1), leaving Tammy Brown as the sole named plaintiff and potential class representative.

Ms. Brown seeks class certification on the basis that all members of the proposed class were subjected to the same allegedly illegal conduct by defendants, that is, the deceptive promotion, marketing, and sale of Marlboro Lights and Cambridge Lights as lower in tar and nicotine when they do not actually provide reduced levels of tar and nicotine to the smoker.  Ms. Brown, very broadly, defines the proposed class as follows:

> All persons who purchased Defendants' Marlboro Lights and Cambridge Lights cigarettes in Kansas for personal consumption from the first date that Defendants sold Marlboro Lights and Cambridge Lights in Kansas through December 31, 2003.
>
> Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants or employees of Defendants, and the immediate family member of any such person.  Also excluded is any judge who may preside over this case.[1]

---

[1] Doc. 40, ¶ 25.

Philip Morris and Altria argue that class certification is inappropriate for several reasons. Most notably, they assert that under the KCPA each member of the proposed class must prove he or she relied on defendants' statements regarding their light cigarettes. Defendants further assert this requirement causes individual questions of fact to predominate this suit, making class certification inappropriate. As earlier indicated, Philip Morris also moves for partial summary judgment on the basis that Ms. Brown cannot prove causation under the KCPA for her own claim.[2]

### III.   Class Certification Standards

The standards for class certification are set forth in Fed. R. Civ. P. 23. A party seeking class certification must satisfy all four prerequisites of Rule 23(a), *and* qualify under at least one of the three "pigeon holes" of Rule 23(b).[3] The court must perform a "rigorous analysis" of whether these requirements have been satisfied.[4] The ultimate decision whether to certify a class under Rule 23 is committed to the broad discretion of the trial court.[5]

---

[2] The court notes defendants have *not* filed any motion challenging the sufficiency of the alternatively pleaded unjust enrichment claim in Count II of the first amended complaint.

[3] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Integra Realty Res.*, 354 F.3d 1246, 1262 (10th Cir. 2004).

[4] *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (party seeking to certify a class is "under a strict burden of proof" to show that all of the requirements are met) (citations omitted).

[5] *Rector v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003); *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999).

In making the class certification determination, the court should accept the allegations in the complaint as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints."[6]  The court may not inquire into the merits of the case.[7]

## IV.  Analysis

A.      Rule 23(a) Requirements

Rule 23(a) provides four prerequisites for class certification.

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[8]

The court will address separately each of these four requirements, i.e., numerosity, commonality, typicality, and adequacy of representation.

1.      Numerosity

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members would be impracticable.  Although Ms. Brown does not identify the size of the

---

[6] *Hart*, 186 F.3d at 1290 n.7 (quotation omitted).

[7] *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

[8] Fed. R. Civ. P. 23(a).

proposed class in her complaint,[9] she states in her papers that literally "hundreds of thousands" sustained damages as a result of defendants' conduct.[10]  During the hearing, Ms. Brown's counsel stated that, if this case were certified, it would be the largest in Kansas history, whether measured in terms of class members or the dollars at stake.

Defendants, for obvious reasons, do not contest the numerosity requirement.  In any event, the court is satisfied that a class which would include all persons who bought Marlboro Lights or Cambridge Lights in Kansas at any time in the past thirty years would be so numerous that joinder would be impracticable.

2.    Commonality

Rule 23(a)(2) requires some question of law or fact common to the class.[11] Ms. Brown contends that common issues in this case include: (1) whether defendants misrepresented the actual amount of tar and nicotine delivered to consumers through light cigarettes; (2) whether defendants intentionally designed the light cigarettes to register misleading tar and nicotine measurements on the FTC-approved testing machine; (3) whether defendants violated the KCPA through unfair/deceptive conduct; (4) whether defendants were unjustly enriched at Ms. Brown's and class members' expense; and (5) whether and to what extent Ms. Brown and class members have been damaged.

---

[9] *See* D. Kan. Rule 23.1(a)(2)(A) (requiring a statement in the complaint of the size and definition of the alleged class).

[10] Doc. 60, p. 10.

[11] *Hart*, 186 F.3d at 1288 ("Commonality requires only a single issue common to the class.") (citations omitted).

Defendants contest the list of issues set forth immediately above, but they essentially concede for the purpose of the instant motion that *some* common questions exist in this case. The court notes that the parties' papers focus much more on whether common issues predominate over individual issues than whether any common issues are present. The court agrees with defendants that the commonality requirement may be generally subsumed within and superceded by the "far more demanding" predominance requirement of Rule 23(b)(3), which is discussed below.[12]   Regardless, the court finds Ms. Brown's assertions regarding defendants' conduct in designing and marketing light cigarettes present questions common to the class.

3.    Typicality

Rule 23(a)(3) requires the claims of the representative parties to be typical of the claims of the class.

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct. Claims do not have to be identical to be typical. A plaintiff's claim may differ factually and still be typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.[13]

_____

[12] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

[13] *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996) (O'Connor, J.) (quotations omitted).

Ms. Brown argues her claims are typical of the claims of the proposed class because defendants made the same false representations regarding light cigarettes to her that they made to all members of the class.

Defendants do not separately address the typicality requirement at length, but note it is uncontroverted Ms. Brown *never* purchased or smoked Cambridge Lights.  Her claims are based on her experience with Marlboro Lights only.  Defendants thus argue Ms. Brown lacks standing to sue on behalf of Cambridge Lights smokers, that she would not be an adequate representative for these class members, and her claims are not typical of the claims of these class members.

The court will address adequacy of representation and standing below.  But, the court but is satisfied Ms. Brown's claims are typical of the claims of the class.  All of the claims in this suit are based on the same legal theory and the same allegedly deceptive conduct of defendants with regard to the design and marketing of their light cigarettes.  Although Marlboro Lights and Cambridge Lights obviously are different brands, both are manufactured by defendants.  Simply stated, *none* of the claims and defenses pleaded in this case appear to depend on differences between the two brands.

4.     Adequacy of Representation

Rule 23(a)(4) requires that the representative party will fairly and adequately protect the interests of the class.  "To meet this requirement, the named plaintiff must be a member

of the class he or she seeks to represent."[14]  In analyzing the adequacy of representation under Rule 23(a)(4), courts routinely ask two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?[15]

Although Rule 23(a)(4) does not expressly authorize the examination of class counsel, courts often have employed it to evaluate the adequacy of class counsel.[16]  In 2003, though, Rule 23 was amended to add subparagraph (g) which governs the manner in which courts should supervise the appointment of class counsel.  Thus, the court will analyze separately the adequacy of counsel and of Ms. Brown, the named plaintiff.[17]

Defendants argue Ms. Brown[18] is an inadequate class representative for several reasons:  (1) Ms. Brown's prior criminal convictions bear on her ability to fulfill her fiduciary duty to the absent class members she would represent; (2) her exclusion of claims for personal injuries due to smoking cigarettes may cause other class members' personal

---

[14] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668 (D. Kan. 2004) (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977)).

[15] *Id.* (citations omitted).

[16] *See, e.g., id.; Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 387 (D. Kan. 1998) (Belot, J.).

[17] *See* Fed. R. Civ. P. 23 advisory committee notes to the 2003 amendments ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [subsection (g)] will guide the court in assessing proposed class counsel as part of the certification decision.").

[18] As noted above, Kristina L. Benedict was also a named plaintiff in this case but has been dismissed.

injury claims to be barred by res judicata; and (3) Ms. Brown lacks standing to sue on behalf of Cambridge Light smokers.  Ms. Brown responds by arguing her past has no bearing on her role as a class representative, that certification would not preclude absent class members from later asserting individualized claims that are not susceptible to class treatment, and defendants' conduct with respect to Cambridge Lights gives rise to the same liability and damages as their conduct with respect to Marlboro Lights.

        a.     Ms. Brown's Criminal History

The record reflects Ms. Brown has a criminal history which includes convictions for felony theft, burglary, writing bad checks, and possession of drug paraphernalia, as well as a violation of probation which resulted in her being sentenced to serve three months in a correctional facility.[19]   Defendants argue these convictions for activities involving dishonesty, false statements, and other misconduct are relevant to whether Ms. Brown is qualified to serve as a fiduciary to the absent class members.  Ms. Brown argues she has been a reliable and honest class representative and defendants have failed to explain how she has or will compromise the representation of the class.  Without intending to sound uncharitable, the court finds Ms. Brown's criminal history more than a bit troubling.  As a practical matter, were this case to proceed to trial, the court seriously questions counsel's judgment call in nominating Ms. Brown as the sole class representative.  But, at the end of the day, the court is unpersuaded that Ms. Brown's criminal history, as a matter of law, renders her an

---

[19] Brown Depo., doc. 90, ex. 5, at 208:10-211:22.

inadequate class member.  There is no evidence Ms. Brown's criminal history presents a conflict of interest with other class members or would affect her ability to prosecute the action vigorously on behalf of the class.

        b.    Res Judicata

Defendants argue that Ms. Brown's exclusion of claims for personal injuries due to smoking cigarettes presents a conflict of interest with other class members because it may cause their personal injury claims to be barred by res judicata.  Defendants further argue the claims in this suit are relatively insignificant compared to potential personal injury claims, but they have not provided any specifics to support this broad assertion.  In any event, Ms. Brown argues that res judicata will not bar personal injury claims and it is appropriate for a class to assert only their claims that are certifiable, while excluding others.

Both parties cite a case from the District of Kansas, *In re Universal Service Fund Telephone Billing Practices Litigation*,[20] but for opposite propositions.  In that multidistrict case, the named plaintiffs sought class certification with respect to a breach of contract claim as well as with respect to certain aspects of an antitrust claim.[21]  They did not seek class certification with respect to their other claims and evidently abandoned their fraud claim altogether.[22]  The defendants in the case argued the named plaintiffs were inadequate class representatives because their abandonment of the fraud claim demonstrated a disregard for

---

[20] 219 F.R.D. 661 (D. Kan. 2004).

[21] *Id.* at 664.

[22] *Id.* at 664, 668.

the interests of the other class members.[23]   In that case, although the Hon. John W. Lungstrum, U.S. District Judge, recognized "[c]laim splitting is generally prohibited by the doctrine of res judicata . . . .,"[24] he could not "'predetermine the res judicata effect of the judgment; this can be tested only in a subsequent action.'"[25]   In holding the named plaintiffs' interests were sufficiently aligned with the class members' interests, Judge Lungstrum stated:

> [a]lthough the named plaintiffs abandoned their common law fraud claim, they continue to pursue all of their other claims for compensatory damages, treble damages (a remedy akin to the punitive damage claim plaintiffs elected to forego when they abandoned their fraud claim), attorneys' fees, and costs, and a judgment enjoining defendants from continuing their allegedly unlawful combination or conspiracy.  This is not a case where the class representatives are pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims.  Rather, here the named plaintiffs simply decided to pursue certain claims while abandoning a fraud claim that was probably not certifiable.[26]

Here, Ms. Brown similarly has chosen to pursue claims for monetary damages and injunctive relief under the KCPA and for unjust enrichment.  Although Ms. Brown has chosen not to pursue a claim for personal injury, which would likely inject individual issues defeating class certification, the court finds that her interests are sufficiently aligned with potential class members' interests.

---

[23] *Id.* at 668.

[24] *Id.* (citing Restatement (Second) of Judgments 2d § 24 (1982)).

[25] *Id.* (quoting Fed. R. Civ. P. 23 advisory committee notes to the 1966 amendments).

[26] *Id.* at 669 (citations omitted).

c.       Standing

Defendants argue that Ms. Brown, who as earlier indicated smokes Marlboro Lights exclusively, lacks standing to sue on behalf of Cambridge Lights smokers.  Ms. Brown argues that the basic issue in this case is defendants' conduct, which she alleges is the same with respect to both brands and gives rise to the same liability and damages.  The court agrees with Ms. Brown.

> Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue, but depends rather on meeting the prerequisites of Rule 23 governing class actions.
>
> . . .
>
> Though there is no additional standing requirement for the plaintiff who seeks to represent a class, a proper class action requires a similarity of claims between the named plaintiff and the class members.  But fundamentally, the named plaintiff must have individual standing.  At the core of the standing doctrine is the requirement that a plaintiff allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.[27]

Accordingly, the standing issue in this case is simply whether Ms. Brown has individual standing.  If so, she may assert the rights of absent class members as long as she meets the prerequisites of Rule 23.  To have individual standing, Ms. Brown must "allege personal injury fairly traceable to [defendants'] allegedly unlawful conduct and likely to be redressed

---

[27] 1 NEWBERG ON CLASS ACTIONS § 2:7 (4th ed. 2006).

by the requested relief."[28]  Here, Ms. Brown seeks money damages, claiming she personally suffered economic loss as a result of defendants' allegedly deceptive representations regarding light cigarettes.  The court finds that Ms. Brown does have individual standing for her claims.

As discussed above in connection with the typicality requirement, Ms. Brown's claims are sufficiently similar to the claims of the Cambridge Lights smokers she seeks to represent. At least based on the limited record presented, the claims in this case do not appear to involve individual characteristics of the two brands.  Rather, the focus is on defendants' representations with respect to both brands, which appear to be similar, and the effect of those representations on Ms. Brown and other class members.   In sum, the issue of standing does not render Ms. Brown an inadequate class representative.

B.      Rule 23(b) Requirements

Because the court has determined Ms. Brown has satisfied all four of the requirements of Rule 23(a), the court will proceed to consider whether she qualifies under any of the alternative provisions of Rule 23(b).   In this case, Ms. Brown claims certification is appropriate under Rule 23(b)(2) and, alternatively, Rule 23(b)(3).[29]   Without a doubt, Ms. Brown's main focus is on Rule 23(b)(3).

1.      Rule 23(b)(3)

_____

[28] *Id.*

[29] As earlier indicated, to certify a class, the court need only find it fits within one of the three types of classes described in Rule 23(b).  Ms. Brown makes no claim that certification would be proper under Rule 23(b)(1).

Rule 23(b)(3) allows certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[30]

       a.     Predominance: The KCPA Claim[31]

In this case, Ms. Brown claims that defendants violated the KCPA, specifically, K.S.A. § 50-626(b)(1)(A), by marketing their cigarettes to consumers as "light" and as being "lowered in tar and nicotine."[32]  As mentioned before, Ms. Brown claims that defendants intentionally designed and manufactured these cigarettes so they would register misleadingly low measurements of tar and nicotine on the FTC testing machine while defendants knew the cigarettes would actually deliver higher levels of tar and nicotine to smokers.

---

[30] "Rule 23(b)(3) also includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria: '(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997) (quoting Rule 23(b)(3)).

[31] Ms. Brown also asserts a claim for unjust enrichment.  Notably, the parties have not briefed the issue of whether class certification on this claim would be appropriate.

[32] K.S.A. § 50-626(b)(1)(A) provides that "[d]eceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) [r]epresentations made knowingly or with reason to know that: (A) [p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ."

Ms. Brown filed this putative class action pursuant to K.S.A. § 50-634(d),[33] which states that "a consumer who suffers loss as a result of a violation of [the KCPA] may bring a class action for the damages caused by an act or practice: (1) [v]iolating any of the acts or practices specifically proscribed in K.S.A. 50-626 . . . ." Ms. Brown and defendants disagree as to whether the language in K.S.A. 50-634(d) injects individualized issues regarding causation into this case, such that class certification would be inappropriate under Rule 23(b)(3). The precise issues here (at which most of the briefing is directed) are: (1) whether Ms. Brown must show reliance on defendants' alleged misrepresentations to prove causation under K.S.A. § 50-634(d); and (2) whether Ms. Brown must prove that each class member suffered a loss as a result of defendants' allegedly deceptive practice.[34]  As explained below, the court finds each of these questions should be answered in the affirmative.

---

[33] In her reply brief, Ms. Brown asserts she also has standing to maintain a class under K.S.A. § 50-634(a)(1) based on the declaratory component of her claims. The court notes that while subsection (a)(1) of this statute allows individual consumers to bring declaratory actions, it does not address class actions. Thus, that section is inapplicable to Ms. Brown's motion for class certification. Although at the hearing Ms. Brown stated that the class could also be certified on an injunctive basis pursuant to K.S.A. § 50-634(c), the parties have provided very little briefing on this issue. The focus of their papers is on whether the class should be certified under section 50-634(d). Accordingly, the court declines to determine whether a class could be certified under section 50-634(c) on any claims for injunctive relief.

[34] During the hearing, in recognition of the mammoth size of the proposed class, the parties were asked if these very significant questions involving the correct interpretation of the KCPA should be certified to the Kansas Supreme Court instead of resolved by the undersigned U.S. Magistrate Judge. Ms. Brown stated she was comfortable with resolution by the undersigned, but would not oppose certification. Philip Morris and Altria said stated certification was unnecessary.

Ms. Brown argues that under K.S.A. § 50-634(d) she need only show the named representative suffered a loss as a result of defendants' alleged misrepresentations and she need not prove causation for each class member. Further, she claims she is not required to show reliance on defendants' alleged misrepresentations to prove causation. Accordingly, she claims common issues predominate this suit, and thus class certification is warranted.

Defendants disagree. They argue that under K.S.A. § 50-634(d) Ms. Brown must show each class member relied on defendants' alleged misrepresentations and purchased their light cigarettes as a result. Defendants claim this type of proof will require thousands of "mini-trials," and thus individual issues render class certification inappropriate.

As resolution of the issues presented here requires interpretation of the language contained in K.S.A. § 50-634(d), the court will apply the standard for statutory interpretation articulated by the Kansas Supreme Court in the leading KCPA case of *Finstad v. Washburn University of Topeka*:

> The interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. The fundamental rule of statutory construction is that the intent of the legislature governs. When construing a statute, a court should give words in common usage their natural and ordinary meaning. In determining legislative intent, we are not limited to consideration of the language used in the statute, but may look to the purpose to be accomplished and the effect the statute may have under the various constructions suggested.[35]

---

[35] 845 P.2d 685, 690 (1993) (citations omitted).

In *Finstad*, the plaintiffs were Washburn University students who brought suit pursuant to K.S.A. § 50-634(b) to recover for allegedly false statements published in Washburn's course catalogue regarding accreditation of the court reporting program.[36]  The students claimed Washburn was liable under K.S.A. § 50-626 and the KCPA did not require them to establish a causal connection between Washburn's conduct and their loss.[37]  The Kansas Supreme Court, however, rejected that argument and held that K.S.A. § 50-634(b) requires a causal connection for private causes of action.[38]  That subsection provides that "[a] consumer who is aggrieved by a violation of this act may recover, but not in a class action, damages or a civil penalty . . ., whichever is greater."[39]  The court explained that Washburn's false statement was a per se violation of the KCPA from the time the KCPA was enacted because K.S.A. § 50-626 declares certain practices to be violations of the KCPA "whether or not any consumer has in fact been mislead,"[40] but clarified that "it does not follow that the students can recover, absent a showing that they are 'aggrieved by' such violation."[41]  The court found

---

[36] *Id.* at 687.

[37] *Id.* at 689.

[38] *Id.* at 691-92.

[39] K.S.A. § 50-634(b).

[40] K.S.A. § 50-626(b).

[41] *Finstad*, 845 P.2d at 690 (quoting  K.S.A. § 50-634(b)).

that the granting of summary judgment was correct because none of the plaintiffs in that case actually relied on Washburn's false statement.[42]

Of course, the case at bar was filed pursuant to K.S.A. § 50-634(d) instead of K.S.A. § 50-634(b). Nevertheless, the court finds the reasoning set forth in *Finstad* applicable here. In fact, interpreting subsection (b) the Kansas Supreme Court noted that it originally provided that "[a] consumer who suffers loss as a result of a violation of this act may recover, but not in a class action, actual damages or a civil penalty . . ., whichever is greater."[43] Subsection (d) provides that "[a] consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by an act or practice: (1) [v]iolating any of the acts or practices specifically proscribed in K.S.A. 50-626 . . . ." In *Finstad*, the court held the that "aggrieved by" language of subsection (b), which replaced the original "suffers loss as a result of" language, "did not alter the private remedy available to a consumer."[44] Accordingly, the court held that "a causal connection is still required to maintain an action under K.S.A. § 50-634(b) . . . ."[45]

Consistent with the Kansas Supreme Court's interpretation of subsection (b) of K.S.A. § 50-634(b) in *Finstad*, this court finds as a matter of law that K.S.A. 50-634(d) requires the

---

[42] *Id.* at 691-92.

[43] *Id.* at 688-89 (quoting K.S.A. § 50-634(b) (emphasis added)).

[44] *Id.* at 692 (emphasis added).

[45] *Id.*

same causal connection.  Thus, Ms. Brown must show that she suffered a loss as a result of defendants' allegedly false statements regarding their light cigarettes.

As in *Finstad*, it is possible that defendants' practices constitute a per se violation of the KCPA under K.S.A. § 50-626, regardless of whether any consumer was actually misled by defendants' statements regarding light cigarettes.  But that does not mean Ms. Brown may automatically recover.  Under K.S.A. § 50-634(d), this court rules she must establish a causal connection between defendants' statements and her loss, i.e., she must show she relied on defendants' statements in purchasing light cigarettes.

The remaining question is whether K.S.A. § 50-634(d) requires a showing that each class member relied on defendants' statements to maintain a class action, or if it merely requires a showing of reliance by the named plaintiff.  Ms. Brown cites a District of Kansas case, *Pound v. Airosol Company, Inc.*,[46] for the proposition that it is only necessary to show the class representative was misled or injured as a consumer. The plaintiff in that case was a competitor of the defendants.  He claimed that defendants' misrepresentations regarding plaintiff's product and his patent on the product encouraged patent infringement by others, discouraged customers and potential customers from purchasing the product, and encouraged the purchase of defendants' product instead of plaintiff's product.[47]  The Hon. Carlos Murguia, U.S. District Judge, granted summary judgment in favor of the defendants on the KCPA claim because the plaintiff did not establish that he, "in his capacity as a consumer,"

---

[46] 368 F. Supp. 2d 1210 (D. Kan. 2005).

[47] *Id.* at 1217.

suffered any injuries as a result of defendants' representation.[48]  Judge Murguia noted that "plaintiff has not asserted that he, himself, was misled into purchasing [defendants' product]."[49]  Judge Murguia thus found that "any injuries [plaintiff] suffered as a competitor of [defendants] resulting from defendants' allegedly misleading or false statements bear no causal connection to defendants' alleged misrepresentations."[50]  Judge Murguia went on to acknowledge "that it is possible that other consumers were misled by defendant' allegedly deceptive acts,"[51] but concluded that he did "not believe that the KCPA was intended to be used as a forum by which plaintiff may bring suit on behalf of all other potentially misled consumers when plaintiff, himself, was not misled or injured as a consumer."[52]

Ms. Brown reads *Pound* to mean that, if the plaintiff in that case had shown he was misled by the defendants' representations, then his KCPA claim could have been certified as a class action, with him serving as the class representative, without any further showing the other class members were misled by defendants' representations.  Respectfully, the court submits that Ms. Brown misunderstands the holding in *Pound*.  That case merely reaffirms that a causal connection between a consumer's loss and a defendant's allegedly deceptive practice is required under the KCPA.  It also makes clear that a plaintiff may not bring suit

---

[48] *Id.* at 1218.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

on behalf of others if *he* has not been injured as a consumer.  *Pound* does not go so far as to

say that plaintiffs are not required to show causation for each class member.  In fact, it does

not speak to this point at all.  In sum, *Pound* is not helpful to the analysis at hand.

Defendants cite several light cigarette cases from outside of Kansas for the proposition

that Ms. Brown must establish causation for each class member under other states' consumer

protection acts.[53]  Ms. Brown cites several cases, also from outside of Kansas, for the

opposite proposition.[54]  Neither side, however, has provided any Kansas case law which

speaks directly to this issue, nor even any non-Kansas case that construes the KCPA.  In any

event, upon careful review of all the cases provided by the parties, all of the briefing, oral

argument and, most importantly, the text of K.S.A. § 50-634(d), the court agrees with

---

[53] *See, e.g., Oliver v. R.J. Reynolds Tobacco Co.*, No. 9830-0268, 2000 WL 33598654, at *5 (Pa. Ct. Com. Pl. Dec. 19, 2000) ("Plaintiff's class would require individual proofs that each proposed class member bought defendant's light cigarettes because that person thought the cigarettes were healthier."); *Pearson v. Philip Morris, Inc.*, No. 0211-11819, 2006 WL 663004, at *10 (Or. Cir. Feb. 23, 2006) (need to prove that each class member was "misled by name 'Lights' or the statement 'lowered tar and nicotine'" creates an individual question that "predominate[s] by a wide margin); *Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294 (Fla. Dist. Ct. App. 2003) ("[T]he smoker's reasons for choosing to smoke 'light' cigarettes" is an individual issue defeating certification.); *Mulford v. Altria Group, Inc.*, No. 05-659 (D. N.M. March 22, 2007) (denying motion for class certification due to the need for individual evidence to determine if class members suffered a loss depending on how they smoked light cigarettes).

[54] *See, e.g., Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 485-86 (Mass. 2004) (class certification warranted because claims "derive from a common course of conduct on the part of the defendants and present the identical issue – whether the defendants misrepresented material information concerning the design, function, marketing, toxicity, and tar and nicotine yields of Marlboro Lights . . . ."); *Curtis v. Philip Morris Co., Inc.*, No. 01-018042, 2004 WL 2776228, at *3 (Minn. Dist. Ct. Nov. 29, 2004) (looking to "the deliberately-deceptive conduct of the defendant to establish a sufficient causal nexus" under the Minnesota Consumer Protection Act).

defendants that Ms. Brown is required to show reliance by each class member to prevail on the KCPA claim.

Under K.S.A. § 50-634(d), "[a] consumer who suffers loss as a result of a violation of this act may bring a class action for the <u>damages caused by</u> an act or practice: (1) [v]iolating any of the acts or practices specifically proscribed in K.S.A. 50-626 . . . (emphasis added)." A plain and common sense reading of the underlined language, in context, indicates that the class action authorized by subsection (d) is for damages caused by a violation of the KCPA. Here, Ms. Brown claims that defendants' statements regarding their light cigarettes constitute a violation of the KCPA because the light cigarettes do not actually deliver lower levels of tar and nicotine than regular cigarettes. Ms. Brown and the other class members seek to recover the money they spent on light cigarettes because they claim that they did not get what they paid for, i.e., the factual theory is that they were promised but did not get cigarettes that delivered lower levels of tar and nicotine than regular cigarettes. If the acts or practices that constitute a violation of the KCPA are defendants' statements regarding light cigarettes, it is not at all clear to the court how Ms. Brown and the other class members can recover damages caused by the statements without showing individual reliance on them.[55]

---

[55] In her supplemental brief, Ms. Brown provides a provisional trial plan (*see* doc. 124, exhibit 2). In it she states she would present statistical evidence regarding the likelihood that certain numbers of people relied on defendants' representations. Based on the record presented, the court is wholly unpersuaded that this type of evidence would be sufficient to eliminate the individual questions of fact that preclude Rule 23(b)(3) certification in this case. Notably, Ms. Brown has not cited any cases where a court allowed this kind of proof

Ms. Brown argues that the above-described interpretation of K.S.A. § 50-634(d) would effectively gut the class action provision of the KCPA.  While the court is sensitive to Ms. Brown's concern, it finds the language of K.S.A. § 50-634(d) requires individual showings of reliance, even if the result is *very* few class certifications in misrepresentation cases.  The court is unwilling to "rewrite" subsection (d) to find otherwise.  If the statute is in need of revision (and it goes without saying that *nobody* has suggested that K.S.A. § 50-634 presents a model of good drafting), the task constitutionally must be performed by Kansas legislators, not a federal judge.

Defendants argue that whether class members failed to receive lower amounts of tar and nicotine from lights is another individual issue that defeats class certification.  According to defendants, actual tar and nicotine deliveries to individuals varies based on the way they smoke, e.g., whether they "compensate" for the lowered amounts by smoking more cigarettes or inhaling deeper when smoking light cigarettes.  Ms. Brown argues that compensation is irrelevant because the issue in this case is whether defendants made misrepresentations, not whether individual class members actually received lower amounts of tar and nicotine.  The court agrees with defendants.  Ms. Brown asserts in this case that defendants that marketed their cigarettes as light and lower in tar and nicotine content and designed them to register misleadingly low measurements of tar and nicotine on the FTC testing machine, even though they knew the cigarettes would actually deliver increased levels of tar and nicotine to

---

in a consumer protection act case.

smokers.  As explained above, the court finds that section 50-634(d) of the KCPA requires individual showings of damages caused by defendants' representations.  Accordingly, the court finds the actual amount of tar and nicotine received by individual smokers, i.e., whether and how those individuals compensated when smoking light cigarettes, is relevant to whether those individuals were damaged by defendants representations.

Defendants argue that certification should be rejected because establishing whether each class member suffered economic injury injects individual issues.  Ms. Brown argues that injury can be established on an aggregate basis and that it would consist of the economic difference between the value of a package of light cigarettes as represented and as it really was, multiplied by the number of packages sold in Kansas during the relevant time period.  She states that the diminution in value would be established through the use of expert testimony.  The court finds this issue is essentially the same as the causation issue.  The court is unpersuaded that damages caused by defendants' representations can be established under K.S.A. § 50-634(d) without individual inquiry.

Defendants also argue their affirmative defenses, most notably the statute of limitations and comparative fault, create individual issues that cannot be resolved on a class-wide basis.  The court agrees that whether comparative fault principles or the applicable statute of limitations bars or diminishes recovery in this case would call for an individual determination.[56]

---

[56] *See Emig v. Amer. Tobacco Co., Inc.*, 184 F.R.D. 379, 390-91 (D. Kan. 1998) (Belot, J.).

Defendants claim that Ms. Brown has not met the implied requirement of Rule 23 that she identify an ascertainable class.[57]  Essentially, defendants argue that the determination of class membership, i.e., the process of identifying every person who purchased defendants' light cigarettes in Kansas for the past thirty years, would require individual adjudication. Ms. Brown points out there is a risk of fraudulent claims in every class action, but that mechanisms could be put in place to guard against said risk.  Although the court finds this issue is not dispositive of the certification question, the court notes, as a practical matter, verifying who actually purchased light cigarettes in Kansas over the past three decades would be a *very* difficult task.  Indeed, during the hearing, Ms. Brown's counsel acknowledged that the class was so broad that it would include a tourist who purchased a single pack of defendants' light cigarettes while driving through Kansas at any time during the last thirty years.

In light of the above-discussed individual questions presented by the KCPA claims in this case, the court finds that class certification under Rule 23(b)(3) is not appropriate. Ms. Brown has not shown that questions of law or fact common to potential class members predominate over questions affecting only individual members.

> b.      Superiority

Given the individual issues presented by the analysis above, the court finds that a class action is not superior to other available methods of adjudicating this controversy.  The court

---

[57] *See Stambaugh v. Kansas Dept. of Corrs.*, 151 F.R.D. 664, 671 (D. Kan. 1993) (Crow, J.).

understands Ms. Brown's concern that individuals may not bring suit without class certification because of the low amount of individual damages. Nonetheless, the court finds that the individual inquiry required by the KCPA renders a class action on those claims unmanageable. Plaintiff has provided a three-phase provisional trial plan, but that plan is based on the assumption that liability in this case could be determined upon common proof. As explained above, that is not the case here.

      2.      Rule 23(b)(2)

In the alternative to class certification under Rule 23(b)(3), Ms. Brown seeks relief under Rule 23(b)(2). The latter provision allows certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "The court may decline to certify a class under Rule 23(b)(2) if the predominant form of relief sought is money damages."[58] The parties barely address this section in their extensive briefing and related documentation. Based on the *very* limited record presented, the court believes it only reasonable to infer that money damages is the predominant form of relief sought here.

---

[58] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 680 (D. Kan. 2004) (Lungstrum, J.) (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161-62 (D. Kan. 1996) (O'Connor, J.); *Heartland Commc'n, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117 (D. Kan. 1995) (Lungstrum, J.); Fed. R. Civ. P. 23 advisory committee notes to the 1966 amendments).

C.      Rule 23(g) Requirements

Rule 23(g)(1)(A) requires an order certifying a class action to also appoint class counsel.  The appointed attorney must fairly and adequately represent the interests of the class.[59]  The court must consider the work counsel has done in identifying or investigating potential claims in the actions, counsel's experience in handling class actions and other types of complex litigation and claims of the type asserted in the present action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.[60]  Were the court to certify a class in this case, it is satisfied Mantese and Associates, P.C. and The Wirken Law Group meet these criteria and would adequately represent the interests of the class as counsel.

## V.  Summary Judgment Standards

As earlier indicated, in addition to both defendants opposing Ms. Brown's motion for class certification, Philip Morris separately has moved for partial summary judgment against Ms. Brown on her individual KCPA claim.  Summary judgment is appropriate if the moving party demonstrates  there is "no genuine issue as to any material fact" and  it is "entitled to a judgment as a matter of law."[61]  In applying this standard, the court views the evidence and

---

[59] Fed. R. Civ. P. 23(g)(1)(B).

[60] Fed. R. Civ. P. 23(g)(1)(C).

[61] Fed. R. Civ. P. 56(c).

all reasonable inferences therefrom in the light most favorable to the nonmoving party.[62]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[63]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[64]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[65]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[66]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[67]  The nonmoving party may not simply rest upon her pleadings to satisfy her burden.[68]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial

---

[62] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[63] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[64] *Id.* (citing *Anderson*, 477 U.S. at 248).

[65] *Id.* at 670-71.

[66] *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[67] *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

[68] *Anderson*, 477 U.S. at 256.

from which a rational trier of fact could find for the nonmovant."[69] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[70] Finally, the court notes summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[71]

A.      Facts

This court's local rule, D. Kan. Rule 56.1, sets forth the requirements for the statements of facts in summary judgment briefing. "The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies."[72] Further,

> All facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answer to interrogatories and responses to requests for admissions. Affidavits or declarations shall be made on personal knowledge and by person competent to testify to the facts stated which shall be admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document shall be attached.[73]

------

[69] *Adler*, 144 F.3d at 671.

[70] *Id.*

[71] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[72] D. Kan. Rule 56.1(a); *see also* D. Kan. Rule 56.1(b) (setting forth identical requirement for briefs in opposition).

[73] D. Kan. Rule 56.1(d).

The court notes *both* sides' statements of fact contain numerous assertions and/or denials not properly supported by the record.  Thus, the parties have not complied with D. Kan. Rule 56.1.  Indeed, many of the numbered facts set forth by the parties contain *no* citation to the record at all.[74]

The few material facts as set forth in the paragraph immediately below are those included in the briefing which are supported by the record.  The court, of course, construes the facts in the light most favorable to the nonmoving party (here, Ms. Brown), as required by well-settled law under Fed. R. Civ. P. 56.  Again, immaterial facts and those not properly supported by the record have been omitted here.

It is uncontroverted that Ms. Brown began smoking Marlboro Lights in 1983 when she was twenty years old and in nursing school.  She occasionally experimented with other cigarettes before that time.  She testified in her deposition that she started smoking Marlboro Lights because some of her fellow nursing students were smoking them and she thought light cigarettes would not be as harmful to her as regular cigarettes.[75]  She also testified that the statement on the Marlboro Lights package which says they are lower in tar and nicotine led her to believe light cigarettes were somewhat better for her than regular cigarettes.[76]  Ms. Brown still smokes Marlboro Lights today.

---

[74] The court notes that Philip Morris did supplement some of its responses to Ms. Brown's statement of facts with citations to the record (*see* doc. 125).

[75] Brown Depo., doc. 90, ex. 2, at 69:14-21.

[76] Brown Depo., doc. 90, ex. 3, at 168:15-17.

B.    Summary Judgment Analysis

Philip Morris argues that Ms. Brown cannot demonstrate its statements regarding its light cigarettes caused her to suffer a loss, as required by K.S.A. § 50-634(d), because she has not shown she relied on those statements in deciding to smoke Marlboro Lights. Ms. Brown argues that a showing of reliance is not required, but even if it is, she claims she did in fact rely on Philip Morris' statements when she started smoking Marlboro Lights. As set forth in connection with the Rule 23(b)(3) analysis above, the court finds that K.S.A. § 50-634(d) requires a showing that Ms. Brown relied on Philip Morris' representations regarding their light cigarettes. This inquiry is a factual one, specific to the individual plaintiff in question. Given the current state of the record, the court is unprepared to say, as a matter of law, Ms. Brown did not rely on Philip Morris' statements when she started smoking. Although neither side complied with D. Kan. Rule 56.1, the court believes that a rational trier of fact could find that Ms. Brown relied on Philip Morris' representations in purchasing light cigarettes. Thus, a genuine issue of material fact exists as to causation, and therefore Philip Morris' motion for summary judgment is denied.

## VI.  Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.    By stipulation of all parties of record, the claims of plaintiff Kristina L. Benedict are dismissed, without prejudice.

2.    Plaintiff Tammy Brown's motion for class certification **(doc. 59)** is denied.

3.      Philip Morris' motion for partial summary judgment **(doc. 69)** is denied.

4.      The parties' attorneys shall confer with respect to discovery and case management issues and then submit, pursuant to Fed. R. Civ. P. 26(f), an updated case management planning meeting report by **May 16, 2007**.  It shall be submitted electronically in .pdf format as an attachment to an Internet e-mail sent to *ksd_ohara_chambers@ksd.uscourts.gov*, and shall not be filed with the Clerk's Office.

Dated this 30th day of March, 2007, at Kansas City, Kansas.


    s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge